## Cooney v. Fischer.

(Decided May 21, 1926.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Pleading—Allowance of Trial Amendment in Broker's Action, Eliminating Credit Pleaded and Asking Judgment for Full Commission, Held Not Error.—In broker's action for balance of commission, after crediting down payment, received from buyer allowance of amendment at trial, alleging that he had no right to retain the down payment, and therefore demanding judgment for full commission, held not error.

2. Brokers.—Broker, procuring himself to be employed by fraud, is not entitled to a commission for services rendered.

3. Brokers—Broker who Conceals Material Facts from his Principal or Makes Fraudulent Representations to Principal's Prejudice, Loses Right to Compensation.—A broker who conceals from principal material facts known to himself or makes fraudulent representations to principal's prejudice loses right to compensation, but rule does not apply to mere errors of judgment or omissions not amounting to misconduct or gross disregard of duty.

4. Brokers—Broker Who Fails to Disclose to Principal Best Terms on Which Transaction can be Consummated is Not Entitled to Compensation.—Broker, employed to buy or sell real estate, is not entitled to compensation where he fails to disclose to his principal the best terms on which transaction can be consummated.

5. Brokers—Broker is Entitled to Commission on Producing Customer Ready, Able and Willing to Enter Into Contract with Principal Only when Acting in Good Faith.—Rule that broker is entitled to commission on producing customer, able, ready, and willing to enter into contract on principal's terms is generally enforced only when broker acts in good faith.

6. Brokers—In Broker's Action for Commission, Evidence of Fraud and Bad Faith Held to Render Peremptory Instruction for Him Erroneous.—In broker's action for commission, evidence of his fraud and bad faith in inducing principal to list property at price less than broker knew it was worth and in serving interests of prospective buyer held to render peremptory instruction for broker erroneous.

7. Brokers—In Broker's Action for Commission, Evidence as to Plan Proposed by Prospective Purchaser to Principal for Purchase of Property Held to Render Peremptory Instruction for Broker Erroneous.—In broker's action for commission, evidence as to proposition presented by prospective purchaser that principal was to convey land so that prospective purchaser could mortgage it to

obtain money to make first payment held to render peremptory instruction for broker erroneous.

O'NEAL & O'NEAL and HENRY J. TILFORD for appellant.

WILLIAM MIX for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, Cooney, is a farmer and he is seeking to reverse a judgment for $650.00 recovered against him by the appellee, Fischer. In 1922, one George Bauer decided that he wanted to buy a farm near Louisville. Fischer and Bauer were friends, and had been such for some years, and when Bauer told him of his desire to buy a farm, Fischer took him to see a place on the Third Street road, but Bauer did not like it. Having heard that Cooney had a farm that he would probably sell, Fischer went to see him. This was the first time he had ever met Cooney, but after talking with him, he induced Cooney to list his farm with him at the price of $15,000.00. They agree that the fee to be paid Fischer for making this sale was $650.00. Fischer insists that this $650.00 was to be paid him out of this $15,000.00, while Cooney contends that this $15,000.00 was to be net to him, and that he did not understand that Fischer was his agent at all. No writing was then signed, but on Decemeber 7, Cooney did sign a writing, presented to him by Fischer, to sell this farm for $15,000.00. On December 9, Bauer gave Fischer a check for $500.00 and signed and deliveded to Fischer a writing to take the farm. About a week after that, Bauer and Fischer saw Cooney and told him they had come to see about the place. Cooney said that he could not get his wife to sign the deed just then, but to let the matter ride for a few days, and he would get her to sign. No objection was made to the suggested delay, but Bauer said: "Well if she doesn't make up her mind to sign the deed, I want my $500.00 back that I paid on the place." Bauer and Fischer say that was the last conversation they had with Cooney about the farm. On May 14, 1923, Fischer sued Cooney, alleging this farm was listed for sale with him, as a real estate agent; that he had procured Bauer as a purchaser of this property and that Bauer was ready, willing and able to comply with the proposed sale; offered so to do, and that the defendant failed to convey

the farm to Bauer. He alleged that Bauer had paid $500.00 to him, which he had kept as a part of his commission, and that after crediting this on his fee, there was a balance due him of $150.00 for which he asked judgment. In his answer, Cooney denied that he listed this farm with Fischer or agreed to pay Fischer any commission. He says that Fischer told him that he had a purchaser, ready, willing and able to buy this property, who was willing to pay $15,000.00 net to Cooney therefor, $5,000.00 to be in cash and the remaining $10,000.00 to be in four equal payments due in one, two, three and four years, and requested Cooney to sign a paper agreeing to accept that offer, which he did, and Cooney denies that the plaintiff has ever been ready, willing or able to comply with that contract. By reply, Fischer denies this. At this same time, Bauer sued Cooney to recover the $500.00, and also the sum of $2,500.00 which he sought as damages for failure of Cooney to convey him the property. The two cases were tried together. In the course of the trial Fischer was permitted, over the objection of Cooney, to amend his petition and did so, alleging that he had no right to retain the $500.00 which he had received from Bauer, or to apply same on his commission, and asking for a judgment of $650.00 against Cooney. Upon a peremptory instruction, the jury returned a verdict in favor of Fischer for $650.00. Upon the issue between Bauer and Cooney, the jury returned a verdict for Cooney. Fisher filed an assignment to Bauer of $500.00 of this judgment.

In his motion for a new trial, Cooney complains (1) of the action of the court in allowing plaintiff to amend his petition, (2) of the peremptory instruction to find for Fischer. We can see no merit in the first contention, but the peremptory instruction should not have been given for the following reasons:

The rule is that, if a broker procures himself to be employed by fraud, he is not entitled to a commission for services rendered. So, if a broker is guilty of fraud in executing the agency his right to compensation is lost, as where he conceals from the principal material facts known to himself, or makes fraudulent misrepresentations of material facts to his principal's prejudice; but this rule does not apply to mere errors of judgment or omissions not amounting to misconduct or gross disregard of duty. Thus, a broker employed to buy or sell property is not entitled to compensation where he fails

to disclose to his principal the best terms on which the transaction can be consummated. The rule that a broker is entitled to a commission when he produces a customer who is able, ready and willing to enter into a contract with the principal on the latter's terms is generally enforced only where the broker acts in good faith.

This farm was first listed with Fischer in October, 1922, at $15,000.00. Cooney was then asking $17,000.00 for this farm. Another real estate agent, C. J. Cronan, testified that the fair and reasonable market value of it then was anywhere from $15,000.00 to $17,000.00. Bauer testified that it was worth $17,000.00 or $18,000.00. The witness, Rath, testified that it was worth at least $17,-000.00. Fischer swore it was worth $17,000.00. Fischer admitted in his evidence that he knew then it was worth more than $15,000.00. Further, in his evidence, there appears this question and answer:

"76. Did you or did you not think, on that occasion and at that time, that $15,000.00 was an undervaluation of the property?

"A. Well, the property belonged to Mr. Cooney, and I was simply acting as his agent to sell the property."

This does not look like good faith to us. Here is an old farmer, 64 years of age, so broken by labor and the infirmities of age, that he had convinced his family he could not stand farm work any more, approached by Fischer, a real estate man, who sought employment as a broker to sell the old man's farm, offering his professional services in a real estate transaction, a matter of every-day occurrence with him, to an old farmer, whose experience in such matters was perhaps limited, and who testified: "I thought I was dealing with a square man." This professional man, who swears now this farm was then worth $17,000.00, whose duty it was then, in good faith to his principal, to sell this farm for the best price obtainable, whose duty it was then to tell the man what he regarded the farm as worth, and not to list it for less, without telling him so, did not then tell Cooney the farm was worth $17,000.00. On the contrary, he told him, so Cooney testified, and Fischer, though recalled, does not deny it, "That is a good price for this property, $15,-000.00." Not only was that bad faith, but after the old farmer had been cajoled into listing it with him, he then went back and told him the party he had in mind would

give $14,000.00. Cooney refused that. Fischer swears Bauer made him an offer of $14,000.00. Bauer swears he did no such thing. This appears to be the old story of trying to serve two masters. Fischer was trying to find a place for Bauer. They were old friends. Fischer was not employed by Bauer, so both he and Bauer testi-. fied; but the ties of friendship between them appear to have been so much stronger than the ties of Fischer's professional obligation to Cooney, that when Fischer was thus placed between love and duty, he failed to tell Cooney the true value of his farm, and listed this old man's farm for $2,000.00 less than he swears it was worth, and without Bauer's even making a suggestion, Fischer goes to Cooney and tries to beat the price down another $1,000.00 by telling him his client had offered $14,000.00.

The writing which Fischer says Bauer signed to buy the property was delivered to Fischer. There is no evidence that he ever offered to deliver it to Cooney. He never offered to pay Cooney the $500.00 which he says Bauer paid upon the purchase price. On the other hand, Bauer never sued Fischer to recover this $500.00, but sued Cooney. We find Bauer and Fischer together through all this transaction. These two suits against Cooney were tried together, and in their evidence they testified for each other, and as soon as the judgment was entered, he assigned $500.00 of it to Bauer.

Stenuous efforts have been made by relators to raise the standard of their profession, and there is perhaps no better way to elevate that standard than by saying, when realtors act in bad faith with their clients, as Fischer did, they shall not be given pay for their alleged services, and the trial court should have done so in this case.

For yet another reason, however, the court should not have given the peremptory instruction. Cooney testified that after his wife refused to sign the deed, he said: "Give me a little time and I will get her in a notion and I will telephone you and Mr. Bauer." He testified that in January he did telephone them, and that Bauer came to see him and told him that he would not be able to get the money before the first of April, and that Bauer then outlined a plan by which Cooney was to convey this farm to Bauer, and Bauer was to mortgage it to the Avery Building & Loan Association to get the $5,000.00 with which to make the first payment. In other words, Bauer proposed to buy this farm with Cooney's money.

Cooney declined to enter into such an arrangement. Of course, Bauer said that no such proposition was ever made, but certainly there was an issue in this record as to whether or not that was made; and if we had not reached the conclusion that a peremptory instruction should not have been given for other reasons, the evidence on this issue was such that the jury should not have been instructed peremptorily to find for Fischer.

The judgment is, therefore, reversed and the cause remanded for proceedings consistent with this opinion.